IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DARRELL DEWAYNE MILES                                           PLAINTIFF

v.                      Civil No. 1:18-cv-01011

STATE OF ARKANSAS; SERGEANT
SCOTT HARWELL; MELISSA BOOKER;
BRANDI WALTHALL; UNION COUNTY
CRIMINAL JUSTICE CENTER; and
EL DORADO NEWS TIMES                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This is a civil rights case filed by the Plaintiff, Darrell Dewayne Miles, under the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis* (IFP). He is not currently incarcerated.

The IFP statute, 28 U.S.C. § 1915, requires the Court to screen complaints for dismissal under § 1915(e)(2)(B). The Court must dismiss a complaint, or any portion of it, if it contains claims that: (a) are frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or, (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

### I. BACKGROUND

According to the allegations in the Complaint (ECF No. 1) and Addendum (ECF No. 5), on January 27, 2015, Sergeant Harwell, of the El Dorado Police Department, interviewed Melissa Booker, who lived at 1401 West Block Street in El Dorado, Arkansas. Booker reported that on January 21, 2015, a black male was standing at the corner of East Cedar Street and Reed Street watching her closely. Booker reported feeling like she was being stalked. On January 22, 2015, Booker indicated she saw the same black male standing in her neighbor's front yard. Booker stated

she was afraid to get out of her vehicle until the black male started to walk away. He walked to the intersection of West Cedar Street and Reed Street and stopped and started staring again. Booker got out of her vehicle and went into her house. She then observed the black male walk past her vehicle and into a wooded area at the end of the street.

A short time later, Booker was inside the house with a friend, Brandi Walthall, when she realized she had left her phone charger in her car. Booker asked Walthall to watch out the window while she went to her car to get the charger. When she was at her car getting her charger out of the back seat, she saw the same black male emerge from the woods and begin walking toward her at a brisk pace. Booker got into the back seat, shut the door, and locked it. Booker reported that the black male stopped at the rear of her vehicle, removed his penis from his pants, and began to masturbate. Booker got out of her car and ran into the house and dialed 911. Walthall was watching the black male through the window and saw him begin to walk away. He stopped at the intersection of West Cedar Street and Reed Street but then turned around and began walking toward the side door of Booker's house. The black male began knocking on her side door but eventually left the area. Booker described the black male as being medium complexion, approximately 5'10" tall, weighing approximately 230 pounds,[1] having a close shaven beard and mustache, and wearing sagging shorts and a hooded sweatshirt with the hood covering his head.

On January 23, 2015, at approximately 12:30 a.m., Booker's dogs and her neighbor's dogs began barking. Booker called 911 because she feared someone was watching her house from the nearby wooded area. She asked that an officer drive through the area shining a spotlight.

---

[1] On the incident report, Plaintiff's height is listed as 5'8" and his weight as 230. (ECF No. 1 at 62). On a medical record dated March 15, 2015, Plaintiff's height is listed as 5'5" and weight as 147.42 kg or 325 pounds. (ECF No. 1 at 130).

On January 28, 2015, at 1:43 p.m., officers were called to the 1400 block of West Block Street regarding a black male running through the woods after being seen standing in the wooded area watching Booker and her step-daughter who were talking beside a vehicle. While in the area, officers saw Plaintiff, who they believed met the physical description given by Booker, and who was standing on the front porch of an apartment located at the intersection of West Cedar Street and Holloway Street (1300 West Cedar Street). Plaintiff alleges he was required to stand in the yard bare footed with the police officers, including Sergeant Harwell, while Booker was driven by in a vehicle with dark tinted windows by Sergeant Chris Lutman. When Booker saw Plaintiff, she began crying and having difficulty breathing. She advised Sergeant Lutman that Plaintiff was the man who had been stalking her and had masturbated in front of her car.

Plaintiff was asked to come to the police station and speak to investigators about the incident. Plaintiff stated he wanted to contact his attorney. Plaintiff was told that after he talked to his attorney, if he wanted to speak with the investigators he should do so at 9:00 a.m. on January 29, 2015. Booker was asked to come in at 8:00 a.m. on January 29, 2015, to look at some photos and provide a recorded statement. Booker was also asked to bring Walthall with her to do the same.

On January 29, 2015, both Booker and Walthall identified Plaintiff as the black male involved in the incidents. As a result, Plaintiff was charged with stalking and indecent exposure. (ECF No. 1 at 60). Plaintiff denies that he has ever engaged in socially aberrant behavior.

Plaintiff was arrested at his home on January 30, 2015. He remained incarcerated in the Union County Criminal Justice Center (UCCJC) until he was able to post bail on March 12, 2015. (ECF No. 1 at 50). Plaintiff contends he was falsely imprisoned and unlawfully detained.

Plaintiff contends Sergeant Harwell allowed the "drive by" identification which was improper in Plaintiff's opinion because he was the only person involved. Plaintiff maintains Booker's and Walthall's falsehoods and the "unprofessional," "unfair," and "unjust" investigation done by Sergeant Harwell caused him to lose his home, car, employment, and his family—a wife and three small boys. (ECF No. 1 at 5-6). Plaintiff also maintains Sergeant Harwell violated his constitutional rights by not reciting his *Miranda* rights, by committing perjury, and by informing him that Booker was going to get a gun and that if Plaintiff did not quit committing deviant acts the community would take action. (ECF No. 5 at 5).

Plaintiff alleges these falsehoods were printed in the *El Dorado News Times* resulting in the entire community turning against him. Plaintiff has attached a copy of the published police log from the newspaper in which the following is stated: "Darrell D. Miles, 37, of 1300 W. Cedar, was arrested Friday on a warrant for second-degree stalking and indecent exposure." (ECF No. 1 at 89).

Plaintiff alleges this was "a crime of hate which targeted the African American race." (ECF No. 1 at 6). Plaintiff maintains Booker manipulated Sergeant Harwell and the El Dorado Police Department. Plaintiff asserts that Booker's actions were the result of a delusional mind "which specifically target[ed] a voting, tax pay[ing] working man [and his] family." (ECF No. 1 at 7). Plaintiff maintains the actual guilty party has never even been identified.

According to Plaintiff, both Booker and Walthall later retracted their statements identifying him. (ECF No. 5 at 2). As a result of the retraction, the criminal charges were dismissed. (ECF No. 5 at 2).[2] Plaintiff asserts he was never allowed to face his accusers and would not recognize

---

[2]Plaintiff actually states he was "acquitted." However, the docket sheets indicate the charges were dismissed because

them.

Further, while he was incarcerated at the UCCJC, Plaintiff alleges he was badly mistreated and placed on twenty-three hour lock down immediately following his booking. Plaintiff alleges that Sheriff Roberts allowed jail personnel to mistreat him by denying him medical treatment and giving him "mustard" for what he thinks was a mild heart attack. (ECF No. 5 at 3). Plaintiff further asserts he was denied outside recreation.

Plaintiff also claims that his landlord, Kelly Paraski, who is not a named Defendant, unlawfully evicted him the day prior to his arrest. (ECF No. 5 at 5). Plaintiff states he was told that his fiancé and children could stay but he could not. Plaintiff states he had been living there for fifteen months and had never missed a rent payment.

Plaintiff has sued Defendants in both their official and individual capacities. Plaintiff seeks compensatory and punitive damages.

## II. DISCUSSION

Under § 1915, the Court is obligated to screen a case prior to service of process being issued. A claim is frivolous when it "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court bears in mind, however, that when "evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting

---

the victim did not wish to pursue the charges. (ECF No. 1 at 86 & 88).

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

In the present case, the Court finds that Plaintiff's claims are subject to dismissal.

### A. Claims Against the State of Arkansas

All claims against the State of Arkansas must be dismissed. States and state agencies are not "persons" subject to suit under § 1983. *Howlett v. Rose*, 496 U.S. 356 (1990); *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). "This bar exists whether the relief sought is legal or equitable." *Williams v. Missouri*, 973 F.2d 599, 599-600 (8th Cir. 1992) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)).

### B. Claims against Defendants Booker and Walthall

Plaintiff's claims against Booker and Walthall are subject to dismissal. A private individual who complains of criminal conduct and is a witness for the prosecution does not act under color of law. *See e.g., Grow v. Fisher*, 523 F.2d 875, 879 (7th Cir. 1975) ("The mere fact that the individual defendants were complainants and witnesses in an action which itself was prosecuted under color of law does not make their complaining or testifying other that what it was, *i.e.,* the action of private persons not acting under color of law."); *Rodgers v. Lincoln Towing Service, Inc.*, 596 F. Supp. 13, 21 (N.D. Ill. 1984), *aff'd*, 771 F.2d 194 (7th Cir. 1985) (A private citizen does not act under color of law when reporting a crime).

### C. Claims Against the *El Dorado News Times*

Plaintiff's defamation claims against the *El Dorado News Times* are subject to dismissal

for several reasons. Initially, as noted above, private parties or entities do not act under color of law for purposes of § 1983.[3] *See e.g., Thomas v. News World Communications*, 681 F. Supp. 55, 66 (D.D.C. 1988) (newspaper did not act under color of state law); *Casterlow-Bey v. Tacoma News Tribune*, Case No. C17-5649, 2017 WL 6820162, *1 (W.D. Wash. Oct. 30, 2017) (same). Next, the Supreme Court has held that defamation, by itself, is insufficient to support a claim under § 1983. *Paul v. Davis*, 424 U.S. 693, 701 (1976); *see also Wade v. Goodwin*, 843 F.2d 1150, 1152 (8th Cir. 1988) (A cause of action for damage to character or reputation is not cognizable under § 1983). In *Paul*, the Supreme Court found that a person's interest in his reputation is not considered liberty or property protected by the due process clause. *Paul*, 424 U.S. at 701. Thus, "regardless of whom a plaintiff chooses to sue, section 1983 does not address an alleged injury to reputation." *Idema v. Wager*, 120 F. Supp. 2d 361, 371 (S.D.N.Y. 2000), *aff'd* 29 Fed. Appx. 676 (2nd Cir. 2002).

**C. Claims Against Defendant Harwell**

Plaintiff's claims against Sergeant Harwell are subject to dismissal. The claims based on Sergeant Harwell's alleged failure to read Plaintiff his *Miranda* warnings fail as a matter of law. The constitution does not require the giving of *Miranda* warnings. *See e.g., Chavez v. Martinez*, 538 U.S. 760 (2003). In *United States v. Patane*, 542 U.S. 630 (2004), the Supreme Court noted that "[o]ur cases . . . make clear . . . that a mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights or even the *Miranda* rule. . . . [T]he nature of the right protected by the Self-Incrimination Clause, which the *Miranda* rule, in turn, protects . . . is a

---

[3]There is no allegation that the *El Dorado News Times* conspired with a state actor to deprive Plaintiff of his constitutional rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).

7

fundamental *trial* right." *Id.* at 641 (internal quotation marks and citations omitted). If statements obtained during custodial interrogation are not used against the party, there is no constitutional violation. *Davis v. City of Charleston*, 827 F.2d 317, 322 (8th Cir. 1987).

### E. Malicious Prosecution Claim

To the extent Plaintiff attempts to assert a malicious prosecution claim, no claim is stated under § 1983. Plaintiff maintains he would not have been prosecuted had Sergeant Harwell utilized proper identification procedures and properly investigated the matter. "It is well established in [the Eighth Circuit] that an action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury." *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) (internal quotation marks and citation omitted).

Plaintiff's claims against Sergeant Harwell based on the alleged improper single person "showup"[4] also fail. In *Pace*, the Eighth Circuit noted that:

> In the context of unduly suggestive lineups [or in this case a showup], only a violation of the core right—the right to a fair trial—is actionable under § 1983. The jurisprudential doctrine . . . against the admission of unduly suggestive lineups is only a procedural safeguard, and does not establish a constitutional right to be free of suggestive lineups.

*Id.* (citation omitted); *see also Brodnicki v. City of Omaha, Neb.*, 874 F. Supp. 1006, 1010-11 (D. Neb. 1995), *aff'd*, 75 F.3d 1261 (8th Cir. 1996). Thus, Plaintiff has "no claim under § 1983 arising out of his participation in an unduly suggestive [showup] since he was not deprived of his right to a fair trial. He could not possibly have been deprived of his right to a fair trial since he was never tried." *Hensley v. Carey*, 818 F.2d 646, 649 (7th Cir. 1987).

---

[4]"In a 'showup,' as opposed to a 'lineup,' a single individual is exhibited to a witness and that witness is asked whether she can identify the individual as the perpetrator of the crime being investigated." *Brodnicki v. City of Omaha, Neb.*, 874 F. Supp. 1006, 1010 n.4 (D. Neb. 1995), *aff'd*, 75 F.3d 1261 (8th Cir. 1996).

Plaintiff's claims against Sergeant Harwell based on his alleged mishandling of the investigation fail to state a claim for relief. Section 1983 only applies to intentional deprivations of constitutional rights; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986); *see also Barbera v. City of St. Clair Shores*, 93 F.2d 572, 1991 WL 112807, *4 (6th Cir. 1991) (unpub. table op.) ("While the [police officers'] investigation of this case may not have been exemplary, it did not violate the plaintiff's constitutional rights. We believe that the defects in the investigation are analogous to 'poor tactical preparation'" which has been held insufficient to state a cause of action); *Dowling v. North Charleston Police Dep't*, Case No. 2:10-2607, 2010 WL 4822569, *3 (D.S.C. Nov. 8, 2010) ("[T]o the extent Plaintiff is claiming negligence or improper investigation of his criminal charges, such claims are not actionable" under § 1983).

Here, there is no suggestion that Sergeant Harwell deliberately fabricated evidence or took any other deliberate action to hinder the investigation. Rather, Plaintiff alleges Sergeant Harwell failed to properly investigate the alleged crime. In other words, Plaintiff contends Sergeant Harwell was negligent in the conduct of the investigation.

To the extent Plaintiff alleges a false arrest claim against Sergeant Harwell, this claim also fails. An arrest warrant was issued on January 30, 2015 (ECF No. 1 at 74-75). For an arrest warrant to issue, the judicial officer issuing the warrant must be "supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." *Whitely v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 564 (1971). "Probable cause to arrest exists when there is a reasonable ground for belief of guilt that is particularized with respect to the

person to be searched or seized." *United States v. Chauncey*, 420 F.3d 864, 870 (8th Cir. 2005).

This independent determination of probable cause "breaks the chain of causation and insulates the initiating party from liability. [E]ven if the officer seeking the warrant has acted maliciously in procuring these warrants, and even if that action results in false arrest, an intermediary's decision to issue a warrant insulates the malicious action from liability." *Jureczki v. City of Seabrook*, 760 F.2d 666, 668-69 (5th Cir. 1985) (citation omitted), cited with approval in, *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1080 (8th Cir. 1990); *see also Simpson v. City of New York*, 793 F.3d 259, 265 (2nd Cir. 2015) (the existence of an arrest warrant is a complete defense to a § 1983 claim for false arrest). Further, in *Baker v. McCollan*, 443 U.S. 137 (1979), the Supreme Court stated that "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Id.* at 145.

Plaintiff also alleges Sergeant Harwell engaged in a hate crime which targeted the African American race and/or engaged in stereotyping. (ECF No. 1 at 6-7). In this case, the victim of the crime and her friend identified the perpetrator as being a black male; both then positively identified the Plaintiff as the black male involved in the crime. This is not a case where an officer targeted or singled out a specific race. To the extent Plaintiff contends Sergeant Harwell committed a crime against him, the claim fails because a private citizen has no right to institute criminal prosecution. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986).

### E. Official Capacity Claims

To state an official capacity claim, Plaintiff must allege that a policy or custom of the City of El Dorado was the moving force behind the deprivation of his constitutional rights. "Official-

capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by a 'government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official capacity.'" *Grayson v. Ross*, 454 F.3d 802, 811 (8th Cir. 2006) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Here, Plaintiff fails to allege that a custom or policy of the City of El Dorado or Union County was the moving force behind any alleged constitutional violations. Thus, all official capacity claims against the City of El Dorado and Union County must be dismissed.

### F. Claims Against the UCCJC

Plaintiff has named the UCCJC as a Defendant. The UCCJC is not a "person" subject to suit under § 1983. *See e.g., Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (police and sheriff's departments are not usually legal entities subject to suit); *La Garza v. Kandiyohi County Jail*, 18 Fed. Appx. 436 (8th Cir. 2001) (unpub. table op.) (affirming dismissal of county jail on grounds that the jail is not an entity subject to suit). Thus, the UCCJC will be dismissed as a Defendant.

### G. Claims Against Ricky Roberts

Although not mentioned in the Complaint, Plaintiff alleges in his Addendum that Sheriff Ricky Roberts allowed personnel of the detention center to mistreat him. (ECF No. 5 at 3). Well settled law provides that "a supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability.") (internal quotations omitted).

"[G]eneral responsibility for supervising the operations of a [detention center] is insufficient to establish the personal involvement required to support liability." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). Rather, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of [Sheriff Roberts, Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)). Plaintiff has not alleged such specific facts of personal involvement against Ricky Roberts. Thus, any claims against him must be dismissed.

### III. CONCLUSION

The claims found in the Complaint (ECF No. 1) and Addendum (ECF No. 2) are subject to dismissal because they are either frivolous or fail to state claims upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). Therefore, all claims against the State of Arkansas, Sergeant Scott Harwell, Melissa Booker, Brandi Walthall, the Union County Criminal Justice Center, and the *El Dorado News Times* are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED**, this 20th day of July, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Court